**UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| F. HOFFMANN-LA ROCHE LTD, ROCHE MOLECULAR SYSTEMS, INC. AND GEN-PROBE INCORPORATED, | |
| Petitioners, | 09 Civ. 7326 (WHP) |
| vs. | ECF FILED |
| QIAGEN GAITHERSBURG, INC. | |
| Respondent. | |

**F. HOFFMANN-LA ROCHE LTD, ROCHE MOLECULAR SYSTEMS, INC. AND GEN-PROBE INCORPORATED'S OPENING MEMORANDUM IN SUPPORT OF PETITION TO CONFIRM ARBITRATION AWARD**

## **TABLE OF CONTENTS**

TABLE OF AUTHORITIES ............................................................................................. ii

I.      BACKGROUND ................................................................................................... 1

II.     STATEMENT OF FACTS ..................................................................................... 2

III.    THE FINAL AWARD SHOULD BE CONFIRMED ........................................... 7

IV.     THE COURT SHOULD AWARD ATTORNEY'S FEES AND COSTS ........................ 15

V.      CONCLUSION ..................................................................................................... 16

# TABLE OF AUTHORITIES

## CASES

*Abondolo v. Sasson & Farah Glatt Kosher Meats, Inc.*,
  No. 06 Civ. 4835, 2007 WL 2154188 (S.D.N.Y. July 18, 2007) ............................... 9

*Bear, Stearns & Co., Inc v. 1109580 Ontario, Inc.*
  409 F.3d 87 (2d Cir. 2005) ......................................................................... 14

*Choctaw Generation L.P. v. American Home Assurance Co.*,
  271 F.3d 403 (2d Cir. 2001) ....................................................................... 14

*ConnTech Development Co. v. University of Connecticut Education Properties, Inc.*,
  102 F.3d 677 (2d Cir. 1996) ....................................................................... 10

*DiRussa v. Dean Witter Reynolds Inc.*,
  121 F.3d 818 (2d Cir. 1997) ......................................................................... 9

*Duferco International Steel Trading v. T. Klaveness Shipping A/S*,
  333 F.3d 383 (2d Cir. 2003) ..................................................................... 8, 10

*Florasynth, Inc. v. Pickholz*,
  750 F.2d 171 (2d Cir. 1984) ......................................................................... 9

*Global Reinsurance Corporation of America v. Argonaut Insurance Co.*,
  No. 07 Civ. 7514, 2009 WL 928014 (S.D.N.Y. Mar. 23, 2009) ............................ 8, 10, 11, 13

*GMS Group, LLC v. Benderson*,
  326 F.3d 75 (2d Cir. 2003) ........................................................................... 9

*Goldstein v. Visconti*,
  No. 00 Civ. 5729, 2001 WL 585633 (S.D.N.Y. May 30, 2001) ........................... 9, 10

*Hall Street Associates, LLC v. Mattel, Inc.*,
  128 S. Ct. 1396 (2008) ................................................................................. 7

*InterDigital Communications Corp. v. Nokia Corp.*,
  407 F. Supp.2d 522 (S.D.N.Y. 2005) ...................................................... *passim*

*JLM Industries, Inc. v. Stolt-Nielsen SA*,
  387 F.3d 163 (2d Cir. 2004) ....................................................................... 15

*Matter of Arbitration Between P.M.I. Trading Ltd. v. Farstad Oil, Inc.*,
  No. 00 Civ. 7120, 2001 WL 38282 (S.D.N.Y. Jan. 16, 2001) ................................. 15

*Max Marx Color & Chemical Co. Employees' Profit Sharing Plan v. Barnes*,
    37 F. Supp.2d 248 (S.D.N.Y. 1999) .......................................................................... 15

*National Bulk Carriers v. Princess Management*,
    597 F.2d 819 (2d Cir. 1979) ................................................................................... 16

*New York City District Council of Carpenters Pension Fund v. Brookside Contracting Co., Inc.*,
    No. 07 Civ. 2583, 2007 WL 3407065 (S.D.N.Y. Nov. 14, 2007) ........................... 15

*ReliaStar Life Insurance Co. of New York v. EMC National Life Co.*,
    564 F.3d 81 (2d Cir. 2009) ......................................................................................... 9

*Saudi Iron & Steel Co. v. Stemcor USA, Inc.*,
    No. 97 Civ. 5976, 1997 WL 790746 (S.D.N.Y. Dec. 23, 1997) .............................. 15

*Schwartz v. Merrill Lynch & Co., Inc.*,
    2009 WL 2496028 (S.D.N.Y. Aug. 5, 2009) .............................................................. 8

*Standard Chartered Bank v. AWB (USA) Ltd.*,
    No. 05 Civ. 2013, 2008 WL 144698 (S.D.N.Y. Jan. 14, 2008) ............................... 14

*Stolt-Nielsen SA v. AnimalFeeds International Corp.*,
    548 F.3d 85 (2d Cir. 2008) ............................................................................. *passim*

*Stolt-Nielsen SA v. AnimalFeeds International Corp.*,
    129 S. Ct. 2793 (Jun. 15, 2009) ................................................................................. 8

*Stone & Webster, Inc. v. Triplefine International Corp.*,
    118 Fed. Appx. 546, No. 03-9082, 2004 WL 2940799 (2d Cir. Dec. 20, 2004) .......... 11, 12, 14

*Wallace v. Buttar*,
    378 F.3d 182 (2d Cir. 2004) ............................................................................. 10, 14

*Westerbeke Corp. v. Daihatsu Motor Co., Ltd.*,
    304 F.3d 200 (2d Cir. 2002) ..................................................................................... 10

*Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp.*,
    103 F.3d 9 (2d Cir. 1997) ........................................................................................... 8

*Yusef Ahmed Alghanim & Sons, W.L.L. v. Toys R Us, Inc.*,
    126 F.3d 15 (2d Cir. 1997) ......................................................................................... 7

### STATUTES AND RULES

9 U.S.C. § 207 ............................................................................................................... 7

9 U.S.C. §§ 1-14 ........................................................................................................... 7

FAA § 10 ....................................................................................................................... 9

N.Y. C.P.L.R. § 7513………………………………………………………………12

Petitioners F. Hoffmann-La Roche Ltd and Roche Molecular Systems, Inc. (collectively "Roche") and Gen-Probe Incorporated ("Gen-Probe") submit this memorandum in support of their petition to confirm the final international arbitration award dated August 12, 2009 in the matter entitled ICDR Case No. 50 181 00502 06, *Digene Corporation, Claimant v. F. Hoffmann-La Roche Ltd and Roche Molecular Systems, Inc., and Gen-Probe Incorporated, Respondents* (the "Final Award").

## I.    BACKGROUND

Petitioner Roche is a recognized world leader in healthcare and has played a pioneering role in both the diagnostic and therapeutic fields for more than 110 years.  In therapeutics, Roche is the world's leading supplier of prescription drugs for cancer treatment.  In diagnostics, Roche is the world leader in the field of molecular diagnostics, offering tests that utilize the Polymerase Chain Reaction ("PCR") technology for which Kary Mullis won the Nobel Prize in Chemistry in 1993.  Roche also widely licenses PCR and sells essential biochemical products to numerous other companies in the molecular diagnostic field.

Petitioner Gen-Probe was founded in 1983 in San Diego, California and obtained the first FDA approval for a molecular diagnostic test.  Gen-Probe markets molecular diagnostic products that test for a wide range of viruses and bacteria.  Gen-Probe received the United States National Medal of Technology in 2006 for its work in developing a test to screen blood donations for HIV and hepatitis C virus.  Roche has been Gen-Probe's largest supplier of essential biochemicals since 1998.

About five years ago, Gen-Probe began development of a test to detect infection with human papilloma virus ("HPV").  Persistent HPV infection causes cervical cancer, so that early detection of infection with certain types of high-risk HPV can enable physicians to monitor and treat patients before the infection progresses to cervical cancer.

To facilitate development of its HPV test, in February 2005 Gen-Probe signed a Supply and Purchase Agreement ("SPA") with Roche pursuant to which Gen-Probe purchases certain essential components (nucleic acid oligonucleotide "probes") for use in the test. Gen-Probe completed development of its HPV test and the product is now on sale in the European Union and in clinical trials in the United States. Roche is also completing a United States clinical trial for its own HPV test.

Respondent Qiagen[1] is a wholly owned subsidiary of Qiagen, N.V. of Venlo, Netherlands, with 2008 net sales of $893 million. Qiagen currently sells the only FDA-approved HPV test. Gen-Probe believes that its test will offer significant advantages over the Qiagen test. Indeed, in the Final Award, the arbitration tribunal found that substantial evidence showed that the public interest would be served by the introduction of Gen-Probe's test and that allowing public access to Gen-Probe's technologies in the HPV field would benefit public health. (Declaration of Peter J. Macdonald, dated Oct. 7, 2009 ("Macdonald Decl.") Ex. 1 at Ex. A at 21.)[2]

## II.   STATEMENT OF FACTS

In the underlying arbitration that gives rise to this case, Qiagen sought to prevent Gen-Probe's test from reaching the market by having the SPA between Roche and Gen-Probe

---

[1]   The underlying arbitration was filed in December 2006 in the name of Digene Corporation; however, that entity ceased to exist on July 30, 2007, when it merged into a separate corporation, Energy Merger Sub, Inc. Prior to the merits hearing in the underlying arbitration, the surviving company changed its name to Qiagen Gaithersburg, Inc. The arbitration tribunal allowed Qiagen to prosecute the demand in the name of the original claimant. However, when this case was filed Digene did not exist, and Petitioners refer to the arbitration claimant as Qiagen, using the correct name of the real party in interest.

[2]   The Tribunal issued its Interim Award of Arbitrators ("Interim Order") on March 31, 2009. The Tribunal incorporated its Interim Order in the Final Award. (Macdonald Decl. Ex. 1 at 28 & Ex. A.)

declared "null and void," on the ground that it violated a 1990 Cross License Agreement

("CLA") concerning certain patents relating to the detection of HPV, as to which Qiagen and

Roche were successors in interest to the original parties.

Section 11 of the Qiagen-Roche CLA includes a broad arbitration clause, which provides

that:

> In the event of a dispute or controversy between the parties rising
> out of this Agreement, this agreement shall remain in full force and
> effect and all terms hereof shall continue to be complied with by
> both parties.  If such dispute or controversy cannot be settled by
> Agreement between the parties, it shall be submitted to arbitration
> pursuant to the rules of the American Arbitration Association.
> Arbitration shall be conducted in New York, New York.  The
> decision of the arbitrator shall be binding upon the parties, and
> may be entered as a judgment by any court of competent
> jurisdiction.  LTI [now Qiagen] and IP [now Roche] hereby submit
> to the jurisdiction of state and Federal courts in the State of New
> York with respect to all matters covered by this Agreement.

(Macdonald Decl. Ex. 2 at ¶ 11.)

On December 4, 2006, Qiagen commenced the underlying arbitration by filing an

international arbitration demand against Roche with the International Centre for Dispute

Resolution ("ICDR"), an international division of the American Arbitration Association, ICDR

Case No. 50 181 T 00502 (the "Arbitration").  In its Demand, Qiagen alleged that Roche

breached the CLA by entering into the SPA.  Pursuant to applicable ICDR rules, Roche and

Qiagen jointly selected a distinguished panel of three arbitrators (the "Tribunal").  Each member

of the Tribunal was a practicing attorney with decades of experience in complex commercial

litigation, as follows:

> **Paul Gale, Chairman**.  Mr. Gale is a partner in the Orange County, California
> office of the law firm of Troutman Sanders, with 35 years of experience in
> complex commercial litigation.  He graduated from the University of California,
> Los Angeles, A.B., summa cum laude, in 1972 and received his J.D. from
> U.C.L.A in 1975.  He is a past member of the Board of Directors of the Orange

County Bar Association and serves as a member of the Central District of California Attorney Delegation to the Ninth Circuit Judicial Conference.

**Thomas Brewer**.  Mr. Brewer is a Fellow of the College of Commercial Arbitrators and has served as an arbitrator and mediator in more than one thousand business disputes.  Mr. Brewer received his B.A. from Dartmouth College, Government, magna cum laude, in 1968 and his J.D. from the Harvard Law School, magna cum laude, law review, in 1975.  In 1973 he received a B.A. in jurisprudence from Oxford University, which he attended as a Rhodes Scholar. He has served as a court-appointed special master in numerous federal and state cases in the Seattle, Washington area.

**Harrie Samaras**.  Ms. Samaras is an experienced IP litigation attorney.  She was previously the Director of IP Litigation for a Fortune 500 telecommunications company and Vice President, Intellectual Property for an international drug delivery company.  She also worked at the United States Court of Appeals for the Federal Circuit as a Deputy Senior Technical Assistant and a law clerk to Chief Judge Helen W. Nies, after beginning her career as a Patent Examiner in the biomedical arts at the U.S. Patent and Trademark Office.  She received a B.S. in Zoology and Chemistry and an M.S. in Cell Physiology and Biochemistry from the University of Maryland, a J.D. from University of Baltimore School of Law, and an L.L.M. in Patent and Trade Regulation from The George Washington University National Law Center.

In June 2007, immediately following the selection of the Tribunal, Gen-Probe sought to participate as a party to the arbitration because Qiagen's claims sought to invalidate the SPA – a contract to which Gen-Probe was a party – and sought to order Roche to recover materials that Roche had already sold to Gen-Probe pursuant to the SPA.  Exercising its discretion, on July 13, 2007 the Tribunal permitted Gen-Probe to participate as a party to the arbitration because Gen-Probe had an enforceable legal right to protect its property interests that were "intimately founded in and intertwined with" Qiagen's claims against Roche.  (Macdonald Decl. Ex. 3 at 3.)

Within six weeks of the Tribunal's decision to permit Gen-Probe to participate in the arbitration, Qiagen filed a First Amended Demand for Arbitration in which it named Gen-Probe as a respondent and in which its asserted an affirmative tort claim for $60 million in damages, based upon the CLA, directly against Gen-Probe.  Qiagen later filed a Second Amended Demand for Arbitration in which it asserted an additional $60 million tort claim against Roche.  In each of

its demands, Qiagen claimed that the SPA constituted a patent license agreement that violated the CLA and that materials sold by Roche to Gen-Probe pursuant to the SPA were covered by certain United States patents asserted by Qiagen to be valid and subject to the terms of the CLA. Roche and Gen-Probe denied that the SPA constituted a breach of any provision of the CLA or was otherwise unlawful.  Moreover, Gen-Probe specifically denied that any of the materials sold by Roche to Gen-Probe through the SPA were covered by any of the patents subject to the CLA.

From December 4, 2006 through August 12, 2009, the Arbitration included the following motions, discovery, evidence, argument, and reasoned awards:

- Roche and Gen-Probe filed a motion for summary disposition of all of Qiagen's claims on October 15, 2007.  Qiagen opposed the motion, arguing that a full evidentiary hearing was necessary to resolve the issues raised in its arbitration demand.  After briefing by the parties, the Tribunal heard a full day of oral argument on the motion on January 17, 2008.  The Tribunal denied the motion, concluding that there remained genuine issues of fact to be considered at an evidentiary hearing;

- Qiagen produced more than 59,000 pages of documents to Roche and Gen-Probe, and Roche and Gen-Probe collectively produced more than 25,000 pages of documents to Qiagen;

- After the close of discovery, the parties undertook substantial pre-hearing procedures, including the submission of two rounds of comprehensive pre-hearing briefs totaling 75 pages from Qiagen and 135 pages collectively from Roche and Gen-Probe, as well as the pre-marking of over 1200 exhibits;

- The Tribunal held ten days of evidentiary hearings from October 27 through November 10, 2008 in New York, NY.  During the hearing, the Tribunal received argument from counsel, testimony from 16 witnesses (including both fact and expert witnesses), and 254 exhibits;

- Following the hearing, the parties submitted an additional two rounds of post-hearing briefing totaling 148 pages from Qiagen and 196 pages collectively from Roche and Gen-Probe;

- The Tribunal received a full day of closing oral argument on the issues of liability on January 30, 2009 in San Francisco, CA;

- On March 31, 2009, after considering the extensive evidence and arguments presented by the parties, the Tribunal issued its Interim Order.  In its 32-page

Interim Order, the Tribunal rejected each and every aspect of Qiagen's claims;

- The parties submitted an additional two rounds of briefing totaling 63 pages from Qiagen and 66 pages collectively from Roche and Gen-Probe regarding Roche and Gen-Probe's requests for recovery of attorney's fees and costs incurred in connection with the Arbitration; and

- The Tribunal received a full day of argument concerning Roche and Gen-Probe's requests for recovery of attorney's fees and costs on June 11, 2009 in Chicago, IL.

On August 12, 2009, the Tribunal issued its Final Award, through which it reaffirmed the findings and determinations of the Interim Order and further awarded attorney's fees and costs to Roche and Gen-Probe. Specifically, the Tribunal reached four conclusions relevant to Roche and Gen-Probe's petition to confirm:

- *First*, the Tribunal held that "Digene [Qiagen] [did] not prevail[] on any of its claims as set forth in the Second Amended Demand for Arbitration dated April 15, 2008" and "denied and dismissed Digene's claims with prejudice in their entirety." (Macdonald Decl. Ex. 1 at 29.)

- *Second*, the Tribunal concluded that "[t]he administrative fees and expenses of the ICDR totaling $46,140.00 shall be borne entirely by Digene [Qiagen]" and [t]he fees and expenses of the Tribunal totaling $671,161.97 shall be borne entirely by Digene [Qiagen]." (*Id.*)

- *Third*, the Tribunal determined that "Roche shall be entitled to an award of: (a) attorneys' fees and costs in the amount of $2,919,571.86; and (b) ICDR fees, including both administrative fees and the Tribunal's fees, in the amount of $238,158.37, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Roche, for a total Final Award of $3,157,729.30." (*Id.*)

- *Fourth*, the Tribunal declared that "Gen-Probe shall be entitled to an award of: (a) attorneys' fees in the amount of $2,725,731.00; and (b) ICDR fees, including both administrative fees and the Tribunal's fees, in the amount of $228,530.09, representing that portion of said fees and expenses in excess of the apportioned costs previously incurred by Gen-Probe, for a total Final Award of $2,954,261.00." (*Id.*)

The Tribunal certified that it issued the Final Award pursuant to the New York Convention of 1958 on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention").  (*Id.* at 30.)

Roche and Gen-Probe jointly filed a petition to confirm the Final Award on August 20, 2009.

## III.     THE FINAL AWARD SHOULD BE CONFIRMED

When a party applies to confirm an international arbitration award under the New York Convention, a district court "*shall* confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention." 9 U.S.C. § 207 (emphasis added); *see Hall Street Assocs., LLC v. Mattel, Inc.*, 128 S. Ct. 1396, 1402 (2008); *InterDigital Commcn's Corp. v. Nokia Corp.*, 407 F. Supp.2d 522, 525-26 (S.D.N.Y. 2005).[3]  Where, as here, an international arbitration takes place in the United States, and the final award is rendered in the United States, a district court may also vacate or modify the award pursuant to the Federal Arbitration Act ("FAA") to the extent that the FAA does not conflict with the New York Convention.  9 U.S.C. §§ 1-14; *see Yusef Ahmed Alghanim & Sons, W.L.L. v. Toys R Us, Inc.*, 126 F.3d 15, 20-21 (2d Cir. 1997).  Thus, a district court must confirm a foreign arbitration award unless one of the defenses set forth in Article V of the New York

---

[3] The power of a district court to confirm a non-domestic arbitration award under the New York Convention is stated in 9 U.S.C. § 207:  "Within three years after an arbitral award falling under the Convention is made, any party to the arbitration may apply to any court having jurisdiction under this chapter for an order confirming the award as against any other party to the arbitration.  The court shall confirm the award unless it finds one of the grounds for refusal or deferral of recognition or enforcement of the award specified in the said Convention."

Convention or FAA provides otherwise.[4]  In addition, but only in the rarest of circumstances, a district court may refuse to confirm an arbitration award because an arbitration panel has acted in manifest disregard of the law.  *Stolt-Nielsen SA v. AnimalFeeds Int'l Corp.,* 548 F.3d 85, 90 (2d Cir. 2008), *cert granted*, 129 S. Ct. 2793 (Jun. 15, 2009)[5]; *Global Reins. Corp. of Amer. v. Argonaut Ins. Co.*, No. 07 Civ. 7514, 2009 WL 928014, at *4 (S.D.N.Y. Mar. 23, 2009).

Judicial review of arbitral awards is limited because there is a strong public policy in favor of arbitration.  *Stolt-Nielsen*, 548 F.3d at 92; *see Duferco Int'l Steel Trading v. T. Klaveness Shipping A/S*, 333 F.3d 383, 389 (2d Cir. 2003).  "Arbitration awards are subject to very limited review in order to avoid undermining the twin goals of arbitration, namely, settling disputes efficiently and avoiding long and expensive litigation." *Willemijn Houdstermaatschappij, BV v. Standard Microsystems Corp*., 103 F.3d 9, 12 (2d Cir. 1997); *Schwartz v. Merrill Lynch & Co., Inc.*, 2009 WL 2496028 at *1 (S.D.N.Y. Aug. 5, 2009).  For this reason, "the law discourages district judges from redoing the work of arbitrators."  *InterDigital*, 407 F. Supp.2d at 525-26. Thus, confirmation of an arbitration award is generally a "summary proceeding that merely makes what is already a final arbitration award a judgment of the court."  *Florasynth, Inc. v.*

---

[4] Article V of the New York Convention sets forth seven bases for denying confirmation of an arbitral award.  Sections 10 and 11 of the FAA set forth seven bases for denying confirmation of, or modifying, an arbitral award.  Many of the bases in the New York Convention and FAA concern the capacity of the parties, the integrity of the arbitrator(s), whether the award has become binding on the parties, or the propriety of arbitration as the method of dispute resolution – none of which are relevant in this matter.  The ground in the New York Convention and FAA that Qiagen appears to rely upon in its Amended Petition to Vacate or Modify the Final Award is that the arbitrators exceeded their powers.  (Qiagen's Amended Petition to Vacate or Modify Arbitration Award, dated Sept. 22, 2009 ("Qiagen Petition") at ¶¶ 8-10.)

[5] In *Stolt-Nielsen*, the United States Supreme Court has granted certiorari to decide a narrow legal question not relevant to this matter:  whether imposing class arbitration on parties whose arbitration clauses are silent on that issue is consistent with the FAA.

*Pickholz*, 750 F.2d 171, 176 (2d Cir. 1984); *accord, Abondolo v. Sasson & Farah Glatt Kosher Meats, Inc*., No. 06 Civ. 4835, 2007 WL 2154188 at *1 (S.D.N.Y. July 18, 2007).

Review of an arbitral award under the FAA on a petition to vacate is particularly limited. *ReliaStar Life Ins. Co. of N.Y. v. EMC Nat'l Life Co.*, 564 F.3d 81, 85-86 (2d Cir. 2009).  To determine whether an arbitrator "exceeded his authority" under FAA §10(a)(4) – which is the only statutory ground on which Qiagen relies – the Second Circuit has determined that "the principal question for the reviewing court is whether the arbitrator's award draws its essence" from the agreement to arbitrate, "since the arbitrator is not free merely to dispense his own brand of industrial justice." *Id.*  The Second Circuit does not consider "whether the arbitrators correctly decided [the] issue." *Id.*  If the parties agreed to submit an issue for arbitration, the Second Circuit will uphold a challenged award as long as the arbitrator offers "a barely colorable justification for the outcome reached." *Id.*  In other words, "as long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," a court's conviction that the arbitrator has "committed serious error" in resolving the disputed issue "does not suffice to overturn his decision." *Id.*; *see Interdigital*, 407 F. Supp. 2d at 528, n.3 ("This Court's inquiry under § 10(a)(4) . . . focuses on whether the arbitrators had the power, based on the parties' submissions or the arbitration agreement, to reach a certain issue, not whether the arbitrators correctly decided that issue.").

Likewise, "[t]he party seeking to vacate an award on the basis of the arbitrator's alleged 'manifest disregard' of the law bears a 'heavy burden.'" *Stolt-Nielsen*, 548 F.3d at 91 (citations and quotation marks omitted); *GMS Group, LLC v. Benderson*, 326 F.3d 75, 81 (2d Cir. 2003). The court's inquiry is "severely limited." *DiRussa v. Dean Witter Reynolds Inc.*, 121 F.3d 818, 821 (2d Cir. 1997); *Goldstein v. Visconti,* No. 00 Civ. 5729, 2001 WL 585633 at *3-4 (S.D.N.Y.

May 30, 2001).  Indeed, a reviewing court may "vacate an arbitral award only in those exceedingly rare instances where some egregious impropriety on the part of the arbitrators is apparent."  *Stolt-Nielsen*, 548 F.3d at 91-92 (citations and quotation marks omitted); *Duferco*, 333 F.3d at 389.  The court may not vacate an award "merely because it is convinced that the arbitration panel made the wrong call on the law."  *Stolt-Nielsen*, 548 F.3d at 92 (citations and quotation marks omitted); *Wallace v. Buttar*, 378 F.3d 182, 190 (2d Cir. 2004).  In short, a court should enforce an award as long as "there is a *barely colorable justification* for the outcome reached."  *Id*. (emphasis in original); *accord Visconti,* 2001 WL 585633 at *3-4.

There is a two-pronged test to ascertain whether an arbitrator has manifestly disregarded the law.  First, a court must consider whether the governing law alleged to have been ignored by arbitrators was well defined, explicit, and clearly applicable.  *Stolt-Nielsen*, 548 F.3d at 93; *Duferco*, 333 F.3d at 389-90.  Second, the court examines the knowledge actually possessed by the arbitrator.  *Argonaut*, 2009 WL 928014, at *5 (quoting *InterDigital*, 407 F. Supp.2d at 529 (internal citations and quotation marks omitted)).  As to this factor, the arbitrators "must appreciate the existence of a clearly governing legal principle but decide to ignore or pay no attention to it."  *Id.* (citations and quotation marks omitted).  Both of these prongs must be met before a court may find that there has been a manifest disregard of the law.  *Id.*

Further, the "manifest disregard of law" doctrine does not permit judicial review of an arbitration panel's findings of fact or a panel's interpretation of a contract.  Arbitrators' factual findings and contractual interpretation are simply not subject to judicial challenge.  *Westerbeke Corp. v. Daihatsu Motor Co., Ltd.,* 304 F.3d 200, 213 (2d Cir. 2002); *ConnTech Dev. Co. v. University of Conn. Educ. Props., Inc.*, 102 F.3d 677, 687 (2d Cir. 1996).  "In the context of contract interpretation, [courts] are required to confirm arbitration awards despite 'serious

reservations about the soundness of the arbitrator's reading of the contract.'" *Argonaut*, 2009 WL 928014, at *5 (quoting *Stolt-Nielsen,* 548 F.3d at 92); *see InterDigital*, 407 F. Supp.2d at 530.  In short, "[c]ourts do not have the power to review the merits of arbitrators' contract interpretations."  *InterDigital*, 407 F. Supp.2d at 531; *see id.* at 530 ("An arbitrator's . . . contractual interpretation is not subject to judicial challenge, particularly on [this Court's] limited review of whether the arbitrator manifestly disregarded the law.")

Here, confirmation of the Final Award is required.  None of the defenses set forth in the New York Convention or FAA apply.  Qiagen's only claim to vacate or modify the Final Award based on either statute is that the Tribunal exceeded the scope of its authority.  (Qiagen Petition at ¶¶ 8-10.)  But each of the Tribunal's conclusions was well within the Tribunal's authority. The CLA's broad arbitration clause provided that any "dispute or controversy between the parties rising out of this Agreement . . . shall be submitted to arbitration pursuant to the rules of the American Arbitration Association."  (Macdonald Decl. Ex. 2 at § 11.)  Thus, the CLA authorized the Tribunal to render every decision set forth in the Final Award, including the Tribunal's award of attorney's fees and costs to Roche and Gen-Probe.  *See Interdigital*, 407 F. Supp. 2d at 528, n.3 ("Pursuant to the Master Agreement's broad arbitration clause, the Panel plainly had the authority to reach the issues disputed by Nokia"); Art. 31, ICDR Rules ("The tribunal may apportion [] costs among the parties if it determines that such apportionment is reasonable, taking into account the circumstances of the case.  Such costs may include: (a) the fees and expenses of the arbitrators; (b) the costs of assistance required by the tribunal, including its experts; (c) the fees and expenses of the administrator; [and] (d) the reasonable costs for legal representation of a successful party"); *Stone & Webster, Inc. v. Triplefine Int'l Corp.*, 118 Fed. Appx. 546, 549-50, No. 03-9082, 2004 WL 2940799, at *2 (2d Cir. Dec. 20, 2004) (affirming

award of attorneys' fees in international arbitration, and reasoning "[e]ven in the face of New York's prohibition [on awarding attorney's fees], we have held that if there is a choice of law clause selecting New York law, the parties may still arbitrate the issue of attorneys' fees" and that the use of arbitration rules authorizing an award of such fees constitutes a waiver of New York CPLR section 7513).

Qiagen does not, and cannot, allege corruption or fraud on the part of either party, impartiality of the neutral Tribunal, or any other applicable defense set forth in the New York Convention or FAA.  Instead, Qiagen's secondary argument for vacating or modifying the Final Award is that the Tribunal acted in manifest regard of the law.  But Qiagen's argument – whether styled as one of statutory or common law – presents:

> the all too common denouement of international arbitrations – relitigation in federal court.  The sophisticated parties to this dispute negotiated an agreement that included a sweeping arbitration clause and relinquished their right to try their claims in federal court.  The arbitration was conducted on mutual consent and each party was represented by able counsel.  [Qiagen] now seeks a fresh analysis of the issues already presented to and decided by the [Tribunal].

*InterDigital,* 407 F. Supp.2d at 525.  As discussed above, the Tribunal issued its 32-page Interim Order after the conclusion of 16 days of evidentiary hearings and the submission of 254 exhibits and four rounds of voluminous pre- and post-hearing briefs.  The Tribunal expressly confirmed the Interim Award in its 30-page Final Award.  The Tribunal correctly applied New York law to interpret the applicable provisions of the CLA and concluded that Roche had not breached that contract.  "Because the [Tribunal] based its decision on an interpretation of the [CLA], that interpretation must stand."  *See InterDigital*, 407 F. Supp.2d at 531 (confirming arbitration award based on arbitrators' colorable interpretation of patent license agreement); *see also Stolt-Nielsen,* 548 F.3d at 98 (ordering denial of petition to vacate arbitration award based on

arbitrators' colorable interpretation of maritime contract); *Argonaut*, 2009 WL 928014 at *5-6 (confirming arbitration award based on arbitrators' colorable interpretation of reinsurance agreements).

Qiagen's objection to confirmation constitutes a mere attempt to re-litigate issues that the Tribunal addressed, and rejected, during the Arbitration. Specifically, Qiagen argues that (a) the Tribunal should have applied the judgment from a prior arbitration to the Arbitration (Qiagen Petition at ¶¶ 3-7)[6], (b) the Final Award was not made in accordance with the CLA (*Id.* at ¶ 8), (c) the Tribunal improperly awarded Roche and Gen-Probe attorney's fees (*Id.* at ¶ 9), (d) the Tribunal improperly allowed Gen-Probe to participate in the Arbitration as an intervening party

---

[6] Qiagen claims that the Tribunal was obligated to collaterally apply the findings of what Qiagen claims was "the first" Arbitration," (Qiagen Petition at 7) from a prior ICDR proceeding between Beckman and Qiagen. Yet, the Tribunal was justified in rejecting this argument on several grounds. First, the Tribunal was presented with not one but *two prior* arbitrations concerning the CLA. The "first" was not the Beckman ICDR proceeding but a French ICC arbitration between Beckman and Institut Pasteur. Thus, contrary to Qiagen's characterization, the Beckman ICDR proceeding was the *second* proceeding and it reached a result inconsistent with the first French ICC decision. In the face of those conflicting decisions, the Tribunal declined to collaterally apply *either* holding because neither of those proceedings had the same roster of parties present, the witnesses and evidentiary record in the present arbitration differed in material respects from the prior arbitrations and the particular issues presented for decision in the present arbitration differed from the issues presented in the earlier arbitrations. (Interim Order (attached to the Final Award as Exhibit A) at 6, n. 3.) Moreover, because Qiagen raised this argument for the first time in the Arbitration during the parties' sixth, and final, round of post-hearing briefing regarding the issue of liability, (Macdonald Decl. Ex. 4 at 28-29), the Tribunal was authorized to disregard Qiagen's belated claim.

(*Id.* at ¶ 10)[7], and (e) the Tribunal improperly refused to allow Qiagen to bring a belated claim

against Roche (*Id.* at ¶ 11).[8] But the Tribunal heard and rejected Qiagen's argument on each of

these issues in reasoned written opinions during the Arbitration. (*See* Macdonald Decl. Exs. 1, 3,

5.) The Tribunal's decision with respect to each issue was correct, and, in any event, was not in

manifest disregard of the law. *See, e.g., Bear, Stearns & Co., Inc v. 1109580 Ontario, Inc.,* 409

F.3d 87, 91-93 (2d Cir. 2005) (confirming arbitration award where arbitrators concluded that

claim was not barred by collateral estoppel); *InterDigital*, 407 F. Supp.2d at 531 (confirming

arbitration award based on arbitrators' colorable interpretation of contract); *Triplefine*, 2004 WL

2940799, at *2 (confirming arbitration award of attorneys' fees in international arbitration

involving contract with a choice-of-law clause selecting New York law); *JLM Indus., Inc. v.*

---

[7] The Tribunal correctly noted that "[t]he Second Circuit has adopted a substantial body of decisional law permitting a non-signatory to an arbitration agreement [(i.e. Gen-Probe)] to compel a signatory [(i.e., Qiagen)] to that agreement to arbitrate a dispute" when "the claims the non-party seeks to arbitrate are 'intimately founded in and intertwined with the underlying contract obligations.'" (Macdonald Decl. Ex. 3 at 3, quoting *Choctaw Generation L.P. v. American Home Assur. Co.*, 271 F.3d 403, 406 (2d Cir. 2001).) Thus, the Tribunal was authorized to grant Gen-Probe's motion to participate. Moreover, the Tribunal's determination is entitled to complete deference by a district court. *See Stolt-Nielsen*, 548 F.3d at 91 ("We do not, however, 'recognize manifest disregard of the *evidence* as proper ground for vacating an arbitrator's award."), *quoting Wallace*, 378 F.3d at 193 (emphasis added).

[8] Qiagen argues that the Tribunal should have permitted Qiagen to amend its demand to add a claim against Roche alleging that the assignment by which Roche received its rights to the CLA patents ("Assignment") was invalid. The Tribunal was authorized to deny Qiagen's request. *See* Art. IV, ICDR Rules ("During the arbitral proceedings, any party may amend or supplement its claim, counterclaim or defense, ***unless the tribunal considers it inappropriate to allow such amendment or supplement because of the party's delay in making it, prejudice to the other parties or any other circumstances***.") (emphasis added). Indeed, the Tribunal denied Qiagen's claim *without prejudice* and explicitly permitted Qiagen to raise this argument in a subsequent proceeding. (Macdonald Decl. Ex. 5 at 2.) Accordingly, the Tribunal cannot be held to have exceeded the scope of its powers or acted in manifest disregard of the law. (*See id.*) In any event, Qiagen's underlying argument is flawed on the merits; a party to a contract can validly assign all or part of its rights under that contract to another unless prohibited by the contract. *See, e.g., Standard Chartered Bank v. AWB (USA) Ltd.*, No. 05 Civ. 2013, 2008 WL 144698, at *10 (S.D.N.Y. Jan. 14, 2008).

*Stolt-Nielsen SA*, 387 F.3d 163, 178 (2d Cir. 2004) (permitting non-signatory to arbitration agreement to compel a signatory to agreement to arbitrate dispute); *Max Marx Color & Chem. Co. Employees' Profit Sharing Plan v. Barnes*, 37 F. Supp.2d 248, 252-53 (S.D.N.Y. 1999) (denying motion to vacate arbitration award where arbitrators denied petitioner's leave to amend arbitration demand).  Accordingly, this Court should deny Qiagen's request for this Court to redo the Tribunal's work and grant Roche and Gen-Probe's request for confirmation.

## IV.    THE COURT SHOULD AWARD ATTORNEY'S FEES AND COSTS

A court may, in the exercise of its inherent equitable powers, award attorney's fees when a party opposes confirmation of an arbitration award without justification.  *New York City Dist. Council of Carpenters Pension Fund v. Brookside Contracting Co., Inc*., No. 07 Civ. 2583, 2007 WL 3407065 at *2 (S.D.N.Y. Nov. 14, 2007); *In Matter of Arbitration Between P.M.I. Trading Ltd. v. Farstad Oil, Inc.*, No. 00 Civ. 7120, 2001 WL 38282 at *4 (S.D.N.Y. Jan. 16, 2001) ("Because Farstad had no legitimate basis for contesting the confirmation of the arbitration award, PMI is entitled to reimbursement for the costs and attorneys' fees incurred in pursuit of this petition"); *Saudi Iron & Steel Co. v. Stemcor USA, Inc.,* No. 97 Civ. 5976, 1997 WL 790746 at *2-3 (S.D.N.Y. Dec. 23, 1997) ("[T]here was absolutely no basis in law or fact for these arguments . . . Because Stemcor's refusal to abide by the arbitrator's awards was without justification, Saudi may recoup the attorneys' fees and costs incurred in bringing the petition to confirm those awards").

In establishing a strong preference for the confirmation of arbitration awards, the Second Circuit has admonished that "[a]rbitration cannot achieve the savings in time and money for which it is justly renowned if it becomes merely the first step in lengthy litigation."  *National Bulk Carriers v. Princess Mgmt.*, 597 F.2d 819, 825 (2d Cir. 1979) (citations omitted).  Qiagen's stated grounds for seeking to vacate or modify the Final Award are entirely baseless and Qiagen

- 15 -

has sought only to place unnecessary obstacles in the path to judgment.  An award of fees and costs is necessary to deter such meritless objections and promote the fundamental purpose of arbitration – the prompt and efficient resolution of disputes.

## V.   CONCLUSION

For the foregoing reasons, the Court should grant Roche and Gen-Probe's petition to confirm the Final Award, enter a judgment thereon[9], and award Roche and Gen-Probe their reasonable costs and attorney's fees incurred in connection with confirmation of the Final Award.

Dated:   October 7, 2009                                        Respectfully submitted,

WILMER CUTLER PICKERING
    HALE AND DORR LLP

By:  __/s/ Peter J. Macdonald_____
      Robert J. Gunther, Jr. (RG-6655)
      Peter J. Macdonald  (PM-1239)
      Alexandra McTague (AM-1633)
      Ross E. Firsenbaum  (RF-6306)
      Violetta Watson (VW-6781)
      399 Park Avenue
      New York, NY 10022
      Tel.: (212) 230-8800
      Fax: (212) 230-8888

*Attorneys for Petitioners F. Hoffmann-La
Roche Ltd and Roche Molecular Systems,
Inc.*

*- and –*

---

[9]  Petitioners have attached a proposed judgment to the Macdonald Declaration as Exhibit 6.

LATHAM & WATKINS LLP

By:  /s/ Stephen P. Swinton
    David J. McLean
    Mark D. Beckett
    Marc R. Suskin
    885 Third Avenue
    New York, NY  10022
    Tel.: (212) 906-1200
    Fax: (212) 751-4864

      - and –

    Stephen P. Swinton (*pro hac vice*)
    600 West Broadway, Suite 1800
    San Diego CA 92101-3375
    Tel:  (619) 236-1234
    Fax: (619) 696-7419

*Attorneys for Petitioner*
*Gen-Probe Incorporated*